[Civ. No. 7196. First Appellate District, Division Two.—April 24, 1931.]

MARY E. HOCKER, Respondent, v. GEORGE H. MOORE, Appellant.

Joseph E. Bien and Werner Olds for Appellant.

Francis C. Brown for Respondent.

SPENCE, J.—Plaintiff brought this action to recover possession of a stock certificate. Plaintiff had judgment upon a trial before the court sitting without a jury, and from this judgment defendant appeals.

The stock certificate in controversy is designated as certificate No. 5, issued by Moore & Co., a California corporation, representing 250 shares of its capital stock. This company may be termed a "family corporation", as most of the stock was at all times owned by the Moore family group. It was formed in 1913 for the purpose of owning and operating a certain hotel in Manzanita. Thomas E. Moore, a brother of both plaintiff and defendant, organized the corporation and was its president. The total number of shares issued was 2,000. These were originally represented by four certificates, issued as follows: No. 1 to Thomas E. Moore for 750 shares; No. 2 to George Moore for 375 shares; No. 3 to James Moore for 375 shares; and No. 4 to F. Ayer for 500 shares. Certificate No. 4 was surrendered by Ayer in 1914 and thereupon certificate No. 5 for 250 shares in the name of J. M. Hocker and certificate No. 6 for 250 shares in the name of F. Ayer were issued in lieu thereof. In 1916 Thomas E. Moore surrendered certificate No. 1 and thereupon certificate No. 7 for 750 shares in the name of J. M. Hocker was issued in lieu thereof. James Moore died in 1917, and his stock, represented by certificate No. 3, was left, share and share alike, to his two

sisters, Mary E. Hocker, plaintiff herein, and Katherine Moore. In 1920 F. Ayer died and his 250 shares, represented by certificate No. 6, was purchased from his heirs by Thomas E. Moore. Neither certificate No. 3 nor certificate No. 6 were ever canceled, but remained in the names of the deceased persons, James Moore and F. Ayer, respectively. From the testimony on both sides it appears that some of the stock certificates were indorsed and changed hands at various times, but no further changes were made on the books of the corporation. In 1923, at the time of the death of Thomas E. Moore, the outstanding stock was represented on the books of the corporation by the following certificates: No. 2 for 375 shares in the name of George Moore (defendant herein); No. 3 for 375 shares in the name of James Moore (deceased); No. 5 for 250 shares and No. 7 for 750 shares in the name of J. M. Hocker (husband of plaintiff herein); and No. 6 for 250 shares in the name of F. Ayer (deceased). The affairs of the corporation appear to have been handled in a most informal manner. This informality did not seem to concern the stockholders until after the death of the president, Thomas E. Moore, on February 26, 1923. He had acted as president up to that time, although it does not appear that he was a stockholder of record after 1916. Litigation over the stock followed his death, but the only stock involved in this action is the 250 shares represented by certificate No. 5, the possession of which certificate has been withheld from plaintiff by defendant.

On this appeal the contention is made that the findings are not supported by the evidence. This contention is without merit. Briefly stated the testimony showed that these 250 shares, being originally a portion of the shares represented by certificate No. 4, had been purchased by respondent from F. Ayer in 1914, and that certificate No. 5, representing said 250 shares, had been issued in the name of J. M. Hocker, the husband of respondent; that said certificate No. 5 had been duly indorsed by said J. M. Hocker and delivered to respondent and remained in her possession for about eight years, until December, 1922; that respondent, and not her husband, was in fact the purchaser and the owner of the entire interest in said shares; that plaintiff caused said certificate to be issued in the name of

her husband, as she did not desire to appear as a stockholder of record in a corporation owning property upon which a saloon was being conducted; that about December, 1922, it was feared that abatement proceedings would be instituted against the property, as the lessee had ·been arrested several times by prohibition enforcement officers; that respondent was informed by appellant that in the event such proceedings were instituted the names of the owners would be published; that appellant stated "You will have your names in the paper. That will look fine for a dentist" (referring to respondent's husband); that, fearing the possibility of such unfavorable publicity, respondent thereafter delivered certificate No. 5 to her brother, Thomas E. Moore, the president of the corporation, and arranged with him to have a new certificate issued in his name, with the understanding that the new certificate would be indorsed by him and delivered to respondent; that said Thomas E. Moore was ill in the hospital at the time, and before certificate No. 5 had been canceled and a new certificate issued he grew worse and died; that appellant obtained possession of said certificate, and although respondent demanded it on several occasions he refused to deliver it to respondent.

We are unable to follow counsel in‐ his argument. He states "That there was a conflict in the testimony with respect to the ownership of certificate No. 5 cannot be denied, but that this conflict is serious does not appear. . . . Plaintiff's entire case rested upon the testimony of herself, her husband and her sister." There was a conflict in certain phases of the evidence, but that conflict was resolved by the trial court in favor of respondent. In our opinion the testimony of respondent, corroborated by two other witnesses, was clear and convincing and amply supported all of the material findings.

The trial court rendered a written opinion, and by reason of certain statements contained in that opinion it is contended that the decision was based upon an erroneous conception of the evidence. This contention is likewise without merit. It is well settled that the oral or written opinion of the trial judge is not part of the findings, and although printed in the transcript it is not properly part of the record. Such opinion may not be considered on ap-

peal as indicating what operated on the mind of the trial judge in coming to his conclusions as to the ultimate facts, the sole question being whether the findings made have sufficient support in the evidence. (*De Cou* v. *Howell*, 190 Cal. 741 [214 Pac. 444]; *Goldner* v. *Spencer*, 163 Cal. 317 [125 Pac. 347].)

█ It is further contended that the trial court exceeded its jurisdiction in "adjudging title to certificate No. 6 as being in the estate of Thomas E. Moore, deceased". This is not certificate No. 5 in controversy here, but another certificate for 250 shares standing of record in the name of F. Ayer, and containing certain indorsements. The judgment made no mention of certificate No. 6, but referred only to certificate No. 5. In its findings of fact the trial court did find that certificate No. 6 for 250 shares was "part of the assets of the estate of Thomas E. Moore, deceased". This finding was no doubt occasioned by the conflicting claims of respondent and appellant upon the trial. Respondent claimed that she was the owner and entitled to possession of certificate No. 5 as alleged in her complaint, and further claimed upon the trial that certificate No. 6 constituted part of the assets of the estate. Appellant claimed that he was the owner of certificate No. 6 and that certificate No. 5 constituted part of the assets of the estate. The findings with respect to certificate No. 6 might well have been omitted. No issue was made by the pleadings with respect to certificate No. 6 and the findings relating thereto were immaterial findings. As the judgment was silent with respect to this certificate, this finding may be disregarded. As was said in *Firebaugh* v. *Burbank*, 121 Cal. 186, at page 188 [53 Pac. 560]: "If the findings of fact that are within the issues presented by the pleadings are sufficient to uphold the judgment, it will not be set aside because there are also findings outside of these issues. These latter findings are to be disregarded as immaterial."

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.