[L. A. No. 15511.   In Bank.—November 19, 1936.]

In the Matter of the Estate of AUGUSTA ASCHER MURPHEY, Deceased.   JOSEPH L. MURPHEY, Executor, etc., Appellant, v. AMERICAN JEWISH CONGRESS et al., Respondents.

[L. A. No. 15802.   In Bank.—November 19, 1936.]

In the Matter of the Estate of AUGUSTA ASCHER MURPHEY, Deceased.   BERTHA HARRIS et al., Appellants, v. HADASSAH, AMERICAN JEWISH CONGRESS et al., Respondents.

Joseph L. Murphey, *in pro. per.,* Louis Luckel and John Munger for Appellants.

Loeb, Walker & Loeb and Walter S. Hilborn for Respondents.

THOMPSON, J.—Joseph L. Murphey, the surviving husband of decedent, as executor and individually as a legatee, appeals from portions of the decree of distribution. In the first instance, there is an appeal from that portion of the decree finding and declaring that the American Jewish Congress is not a charitable organization, and, therefore, was entitled to the full sum bequeathed to it by the decedent instead of being compelled to take a *pro rata* portion thereof in order to bring the total bequests to charity to one-third of the distributive value of the estate. The articles of incorporation were introduced in evidence and also oral testimony. Among the purposes for which the corporation was organized are the following:

"(a) To safeguard the civil, political, economic, and religious rights of the Jews in all countries.

"(b) To further the development of the Jewish National Home in Palestine.

"(c) To develop an articulate, intelligent, widespread and compelling public opinion touching Jewish interests and problems.

"(d) To gather and disseminate information concerning such interests and problems, and to foster the free and open discussion of them.

"(e) To secure and maintain equality of opportunity for Jews everywhere, and, in every lawful manner, to secure effective remedies, assistance, and redress in all cases of injustice, hardship, or suffering arising out of discriminatory measures against Jews, or from the violation or denial of their lawful rights."

The oral testimony establishes, without contradiction, that the purposes of the respondent are political. The purposes which we have quoted from the articles confirm the oral testimony and establish beyond question their political character. But that does not conclude the matter. We might have serious doubt of the proper determination of the

question were it an open one in this state, particularly in view of *Bowditch* v. *Attorney General,* 241 Mass. 168 [134 N. E. 796, 28 A. L. R. 713], *Habershon* v. *Vardon,* 64 Eng. Rep. 916, *Slee* v. *Commissioner of Internal Revenue,* 42 Fed. (2d) 184 [72 A. L. R. 400], and *In re Killen's Will,* 124 Misc. 720 [209 N. Y. Supp. 206, 208]; in which latter case it was held that a bequest to an executor of a sum to be spent in furthering the ''development of the Irish Republic'' was invalid because it was for a political, and not a charitable purpose. In fact, as we understand it, ''the development of the Jewish National Home in Palestine'' contemplates the resettlement of Palestine under British mandate by the Jewish people and is already the cause of friction with the Arabs. In the Habershon case a bequest for almost identical purposes was held invalid. However, we think the question is answered by the case of *Collier* v. *Lindley,* 203 Cal. 641 [266 Pac. 526], in which this court held that a trust for the promotion of political purposes was eleemosynary and charitable, and therefore not invalid. (See, also, 16 Cal. Law Rev. 478.) In the Bowditch case, which we have cited, it was held that a bequest to promote the cause of ''women's rights'' was not charitable but political, the court saying: ''whether such an alteration of the existing laws and frame of government would be wise and desirable is a question upon which we cannot, sitting in a judicial capacity, properly express any opinion''. While we feel bound by the conclusion in the Collier case, yet the quoted language is pertinent to the proposition that we cannot distinguish between political purposes, saying one is charitable and another is not, assuming, of course, that the changes sought are not *contra bonos mores* and are to be brought about by peaceable means, and not by war, riot, or revolution. (See Bogert, Trust and Trustees, vol. 2, sec. 378.) Since it cannot be said that the purposes of the legatee bring it within the exceptions, we must hold that it is a charitable organization and its bequest must be reduced accordingly.

Similar appeals were taken from that part of the decree holding that the Council of Jewish Women of Los Angeles was not a charitable organization. And while they were allowed the full sum of the bequest the decree reveals that the council made no objection to the petition of the executor and expressed its willingness to accept a *pro rata*

sum calculated upon all the bequests to charity, not exceeding one-third of the distributive value of the estate. In subsequent proceedings in the same estate it appears that the council has in fact accepted the lesser sum in full satisfaction of its legacy. In order that proper distribution of the excess may be made, this portion of the decree will have to be reversed.

Appeals are also taken from that portion of the decree denying attorney's fees to the lawyer who was employed by the executor, after the filing of the final account and petition for distribution. The executor says that he proceeded upon the theory that various legatees, including the American Jewish Congress and Council of Jewish Women, were charitable organizations; that when he discovered a different contention was being advanced he felt called upon to, and did, employ counsel to assist him. The court so found, but refused to make an allowance, evidently upon the theory that the services so rendered were not in aid of any duty owed by the executor to the estate. And we are in accord with the conclusion. In *Estate of Friedman*, 176 Cal. 226 [168 Pac. 21], the entire residue of the estate was given to the Hebrew Home for Aged Disabled. Various persons appeared claiming to be heirs and, among other things, asserted that the home could take only one-third of the estate. Finally, the home brought an action to determine the rights of all parties and the court rendered a decree declaring there were no heirs, and the home, although a charitable institution, was entitled to take the whole. An allowance was made for the attorneys for services rendered in this connection. This court held that the allowance was improper because it was no part of the duty of the executor to participate in a proceeding to determine the succession to the estate. In principle that case cannot be distinguished from the situation here, where it appears that the only services rendered by counsel were in endeavoring to advance the position of appellant as to the manner in which the estate should be distributed. (See *Estate of Ross*, 179 Cal. 358, 360, 361 [182 Pac. 303], and cases cited; also *Estate of Parsell*, 190 Cal. 454, 456 [213 Pac. 40, 25 A. L. R. 1561].)

By the same process of reasoning we arrive at the conclusion that the executor was not a party aggrieved

by the decree of distribution, and, therefore, not entitled to prosecute this appeal (*Estate of Ayers*, 175 Cal. 187 [165 Pac. 528], *Estate of Morgan*, 203 Cal. 569 [265 Pac. 241], and *Estate of Babb*, 200 Cal. 252 [252 Pac. 1039]), but that does not render the appeal by Joseph L. Murphey ineffective, nor change the outcome hereof.

The respondent asserts that in case of a reversal of those portions of the decree holding the two institutions to be noncharitable, only Murphey should take his share of the bequests deducted, and the next of kin, who have not appealed, should not share therein. The rule laid down in *Smith* v. *Anglo-California Trust Co.*, 205 Cal. 496 [271 Pac. 898], and *Lake* v. *Superior Court*, 187 Cal. 116 [200 Pac. 1041], is not applicable here. Here the portions of the decree appealed from are interwoven and affect the entire decree. By distributing more to the two organizations than they were entitled to, the share of the others was correspondingly decreased. Here the rule to be applied is found to be stated in *Whalen* v. *Smith*, 163 Cal. 360 [125 Pac. 904, Ann. Cas. 1913E, 1319], wherein it is said in effect that where the part appealed from is so interwoven with the whole as to affect it, then the appellate court should do that which justice requires. It needs no argument to demonstrate that here the amount deducted from the two organizations should be distributed among those to whom it should have been decreed in the first instance.

There are also appeals in case L. A. No. 15802, on behalf of a number of the legatees from an order denying their motion to vacate and set aside certain portions of the decree of distribution, particularly that portion which found the sum to be distributed after deducting that given to the charitable organizations was only $13,231.21. In other words, they are contending that they should share in the sums which we have said should be deducted from the two charitable organizations. Inasmuch as that question is already determined in their favor we need not concern ourselves with the assertion that the order is not an appealable one. The exact relief asked for by them in their appeal has been granted by what we have already said in case L. A. No. 15511. Inasmuch as the portions of the decree which the appellants sought to vacate must be reversed in appeal L. A. No. 15511, no justiciable question remains, and this

appeal may be dismissed, the appellants, however, to recover their costs. It is so ordered.

In case L. A. No. 15511, the appeal of Joseph L. Murphey as executor is dismissed; that portion of the decree denying an allowance for attorney's fees is affirmed; and those portions of the decree declaring the American Jewish Congress and the Council of Jewish Women of Los Angeles to be noncharitable and decreeing them the full amount of their legacies as fixed by the will and those portions of the decree fixing the distributive shares of the noncharitable legatees are reversed, and the court is instructed to revise its decree in accordance with the views herein expressed.

Curtis, J., Langdon, J., Shenk, J., Seawell, J., and Waste, C. J., concurred.

Rehearing denied.