[Civ. No. 16108.   First Dist., Div. One.   Oct. 15, 1954.]

Estate of RAYMOND THEODORE RAPHAEL, Deceased. BERTHA RADO RAPHAEL, Appellant, v. HARRY RAPHAEL, as Administrator, etc., Respondent.

Philip S. Ehrlich and Albert A. Axelrod for Respondent.

BRAY, J.—Bertha Rado Raphael, widow and sole distributee, appeals from the ''Order Settling, Allowing and Approving Administrator's Final Account and Order Allowing Compensation for Extra-ordinary Services to Attorneys for Administrator and Order Denying Motion that Costs on Appeal be Paid from Assets of the Estate.''

## QUESTION PRESENTED

While the appeal is from the entire order entitled as above, actually appellant attacks only those portions allowing additional statutory fees to the administrator and his attorneys and extra compensation to his attorneys for services rendered subsequent to the entry of the order of final distribution. The validity of the allowance depends upon whether the services were rendered the estate.

## RECORD

Respondent administrator is the brother of deceased and heretofore unsuccessfully asserted a claim to succeed to half of the estate. On June 6, 1951, the order of final distribution was entered distributing the entire estate to the widow (affirmed in *Estate of Raphael*, 91 Cal.App.2d 931 [206 P.2d 391], appeal by Harry Raphael; see also *Estate of Raphael*, 115 Cal.App.2d 525 [252 P.2d 979], appeal by the widow from certain orders confirming report of referee and settling administrator's final account, finding certain property to belong to Harry and not to the estate.) On June 3, 1953, the administrator filed a final account and petition for discharge. The account covered the period March 21, 1951 (final accounting date settled in the order of final distribution of June 6, 1951) to May 6, 1953. In this order the court allowed the administrator's attorneys $1,500 as compensation for extra services, and $124.60 balance due on statutory commissions, all for services rendered the administrator subsequent to the order of final distribution, and allowed the administrator $124.60 as balance due on his statutory commission for services likewise rendered during that period. The court denied the administrator his request for extra compensation. It is these allowances which appellant attacks, claiming that the services were for Harry's benefit as an individual, not for the benefit of the estate, and merely to oppress the widow. We will consider seriatim the items forming the basis for the allowances.

1. The balances of statutory commissions to both the attorneys and the administrator—to each, 1 per cent of $12,-

460.70. ▇ In *Estate of Raphael, supra,* 115 Cal.App.2d 525, the probate court was directed to require the administrator to account for $1,875 received from the sale of an automobile and $500 received for part payment of the "Fallis" loan. Harry had claimed these sums as belonging to him. The total of these two sums, $2,375, is included in the $12,460.70 accounted for since distribution. The balance of $10,085.70 represents gross rentals received from the Chestnut Street property. Appellant contends that as the administrator was forced by the court to account for the $2,375, he and his attorneys should not be allowed a commission on it. Undoubtedly the probate judge felt that Harry, in good faith, although erroneously, contested the estate's ownership of that amount, and that commissions should be allowed on it as on any other amounts accounted for. We see no error. ▇ As to the rentals, appellant contends commissions can be allowed only on the *net* rentals and not on the *gross,* relying on *Estate of Reinhertz,* 82 Cal.App.2d 156 [185 P.2d 858, 186 P.2d 755], which held that the operation of an apartment house by an administrator is more in the nature of the operation of a business than the ordinary rental of real property and the statutory commission should be allowed only on the net income. Respondent contends that the income from the Chestnut Street property was the mere receipt of what the *Estate of Reinhertz* referred to as "ordinary rental of real property" and was not similar to an apartment house operation. There is nothing in the record from which we can determine the character of that property, except certain statements in the final account indicating that the property is rented for stores. Therefore we must assume that the probate court knew of the character of the property and that the moneys received were "ordinary rental of real property" upon which the commissions may properly be based upon gross receipts.

2. The extra compensation was based upon five claimed services. ▇ (a) The O'Brien and Greene matter. Bertha's former attorneys, O'Brien and Greene, had been adjudged to have a lien for $25,000 against her distributive share in the estate. Bertha by payment reduced this amount to $15,000. July 17, 1951, after Bertha had appealed from portions of the decree of distribution (although not from the portion establishing said lien), Bertha demanded that respondent as administrator pay to an escrow agent for the benefit of O'Brien and Greene the remaining $15,000. July 23, 1951, O'Brien and Greene joined in this request. Respondent refused both

requests. An order was obtained by O'Brien and Greene and joined in by appellant requiring respondent to appear September 18th and show cause why he should not pay the amount requested and be declared in contempt of court for not having done so. On October 19th the court granted the petition of O'Brien and Greene but denied appellant's petition for delivery to her of other assets. The court also denied respondent's request for extra compensation for himself and his attorneys without prejudice to seeking it at the termination of the proceedings. Respondent moved to vacate the order and the motion was denied November 15th. November 21st, the court gave respondent until November 23d to show cause why he should not be held in contempt. Respondent then sold stock of the estate and satisfied the lien. Respondent claims he refused to recognize the lien or to pay O'Brien and Greene for the reason that his attorneys advised him that the probate court had no jurisdiction to make the order requiring payment of the lien, as O'Brien and Greene had no better rights than had their assignor. Representation of respondent in the foregoing proceedings is one of the factors upon which the court allowed $1,500 extra compensation to the administrator's attorneys.

We are unable to determine how or in what manner the estate was benefited by the actions of respondent and his attorneys in resisting Bertha's application to have the administrator pay her former attorneys out of her distributive share the amount of the lien of her former attorneys. Bertha was the sole distributee under the decree of distribution, and the only one who could object to the placing of a lien on her share. She not only did not object but consented. In her appeal then pending from the decree of distribution she did not appeal from, but expressly accepted, that portion of the decree distributing the estate to her. The appeal related only to certain items of the administrator's account and the failure of the court to find that additional property belonged to the estate. Thus, there was no stay of the operation of the decree as to distribution. There were ample assets in the hands of the administrator to cover the attorneys' and administrator's fees and costs which under the terms of the decree were reserved to be determined later, and to pay the $15,000 which the administrator was ordered to pay. We can find no theory upon which the estate could be benefited by the administrator's action in this respect. Therefore, the services rendered by his attorneys were rendered to him personally and not in his rep-

resentative capacity and such services could not be a proper charge against the estate. At oral argument it was stipulated that if this court determined that these services were not a proper charge, the amount of the award should be reduced from $1,500 to $1,200.

(b) Defense of Bertha's appeal from the final accounting of June 6, 1951 (recorded in 115 Cal.App.2d 525). This appeal challenged respondent's accounting as to over $100,000 of the estate property. With the exception of requiring respondent to account for the $2,375 heretofore mentioned, the reviewing court found against Bertha's attack on the account. The appeal was a challenge by Bertha of respondent's stewardship of the estate funds as shown in his final account. That the court found only relatively minor modifications indicates that respondent had not ''defaulted in his fiduciary duties'' as claimed by appellant. The attorneys were defending the administrator's account and hence an allowance for extra compensation to them is proper. (See *Ludwig* v. *Superior Court,* 217 Cal. 499 [19 P.2d 984].) While respondent's attorneys on that appeal were also representing him personally as to certain other matters, that fact would not prevent them from being compensated for the services rendered him in his representative capacity.

Appellant cites a number of cases such as *Firebaugh* v. *Burbank,* 121 Cal. 186 [53 P. 560], and *Estate of Lynn,* 109 Cal. App.2d 468 [240 P.2d 1001], as supporting her contention that no compensation can be allowed an administrator or his attorneys upon appeal from a decree of distribution. These cases all dealt with services claimed to have been rendered by them in resisting the distribution or the determination of heirship proceedings and held that it is no part of the administrator's duties to make such resistance. However, none of them dealt with services rendered by the attorneys for the administrator in defending an attack upon his account. *Firebaugh* v. *Burbank, supra,* expressly held that during appeal from the decree of distribution the administrator and his attorneys would be entitled to commissions on additional property coming into the estate and to extra compensation for extraordinary services, if any were rendered the estate. Surely, successfully defending the administrator's account constitutes extraordinary services for which compensation may be allowed. See *In re Rose,* 80 Cal. 166 [22 P. 86], which so holds.

(c) Action No. 405649. Bertha sued respondent both as administrator and individually for declaratory and equi-

table relief alleging that respondent was claiming property belonging to her and was attempting to transfer her interest in some of it to unknown defendants. Respondent's attorneys filed for him a demurrer, motion to strike and points and authorities. Thereafter Bertha dismissed the action against respondent as administrator. It is still pending against him individually. The attorneys were representing respondent in his capacity as administrator as well as individually. There appears no good reason why in the exercise of its discretion the probate court should not have allowed the attorneys compensation for that portion of their services rendered respondent in his representative capacity. Moreover, the decree of distribution expressly provided that the administrator should have a first lien on the assets of the estate ''for all costs and expenses incurred or to be incurred in the defense by him'' of this very action.

(d) Action No. 409489 for partition of real property in which the estate had a half interest, brought by Bertha against respondent as administrator and individually. Respondent owned a half interest. Bertha asked for the appointment of a receiver for the entire property and an accounting from respondent. Respondent's attorneys who represented him in his representative capacity as well as individually, appeared at the hearing of the application for the receiver. A lengthy stipulation was entered into between the parties and their counsel by which the matters in issue were settled and later on Bertha dismissed the action. Respondent in that action was defending the interests of the estate as well as his own. No good reason appears why his attorneys should not be compensated for the portion of their services rendered him in his representative capacity.

(e) Sale of certain stocks. In order to pay the $15,000 balance on the fees due O'Brien and Greene which as heretofore stated the court ordered respondent as administrator to pay, it was necessary to sell certain stocks of the estate. The sale of estate stock to comply with the order obviously was an estate matter. The administrator's attorneys were entitled to compensation for their services in connection with this sale. ''The allowance of extraordinary fees is a matter of discretion with the trial court and is not to be interfered with on appeal except for abuse. Such discretion not only invests the trial court with the power to determine whether the character of the services is such as to warrant extra compensation, but to determine the amount.'' (*Estate*

*of Scherer,* 58 Cal.App.2d 133, 142 [136 P.2d 103].) All of the items which the court used as a basis for allowance of extra compensation, except item (a) above discussed, were proper ones.

██ Appellant contends that no compensation can be allowed for post-distribution activities, citing *Estate of Murphy,* 7 Cal.2d 712, 716 [62 P.2d 374], as so holding. That case does not so hold. It holds that services not in aid of any duty owed by the executor to the estate could not be compensated. That, of course, would be true whether the services were rendered before or after distribution.

Appellant contends that because of alleged personal antagonism of respondent towards Bertha, respondent should never have been appointed administrator and that all of respondent's actions in connection with which the court awarded extra compensation were *"Harry* v. *Bertha."* As we have pointed out, the services for which the court allowed compensation (excepting item (a)) were services which the court could and did find were services rendered by respondent in his representative capacity. The court, too, knew the entire history of the estate and this contention of appellant. With that knowledge it found against appellant's contention. We cannot say that the court's determination is unsupported.

The extra compensation ordered to be paid by the administrator to his attorneys is reduced to $1,200. In all other respects the order is affirmed. Each party shall bear his or her own costs.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied November 12, 1954, and appellant's petition for a hearing by the Supreme Court was denied December 9, 1954.