[L. A. No. 25429. In Bank. Oct. 31, 1960.]

EVERLY ENTERPRISES, INC. (a Corporation) et al., Respondents, v. GEORGE T. ALTMAN, Appellant.

GEORGE T. ALTMAN, Appellant, v. EVERLY ENTER-PRISES, INC. (a Corporation) et al., Respondents.

Lawrence William Steinberg for Appellant.

Joseph M. Wapner for Respondents.

SCHAUER, J.—In these two causes, consolidated for trial and for appeal, George T. Altman appeals from an adverse judgment granting plaintiffs-respondents[1] declaratory relief against him and denying his sought-for rescission and cancellation of certain instruments. We have concluded, for reasons hereinafter stated, that, although the trial court correctly decided that Altman is entitled to no relief against plaintiffs, the judgment should be modified to provide that Altman may retain, rather than be divested of, the security evidenced by the fourth trust deed described in the pleadings and judgment, and, as so modified, affirmed.

Prior to April 25, 1956, Altman was the owner of 50 shares, which comprised all the outstanding capital stock, of Everly Enterprises, Inc., a California corporation, hereinafter called Everly. The corporation owned a ranch in Riverside County which had proved unprofitable and was in need of costly improvements. Altman, a practicing attorney and not a farmer, was interested in making a deal whereby someone would fur-

---

[1]Plaintiffs-respondents are Everly Enterprises, Inc., a corporation; Specialty Products Co., a copartnership composed of John T. Clark and Betty Lee Morales; John T. Clark and Betty Lee Morales, individually; and Max Guttman. For convenience they will sometimes in this opinion be referred to jointly as plaintiffs.

nish the money necessary to rehabilitate the ranch and make it into a profitable holding. He contacted plaintiffs Clark and Morales, who as partners doing business under the name of Specialty Products Co., hereinafter called Specialty, were engaged in producing and marketing "organically grown" crops. They became interested in the property, and a deal was made whereby they agreed to purchase half (25 shares) of Altman's stock in Everly, with an option to buy an additional 40 per cent (20 shares), and to take a five-year lease of the ranch land for Specialty. But they required and received an agreement from Altman that there should be no personal liability upon the promissory note executed by Specialty for the $12,250 unpaid balance of the purchase price of the stock, which balance was to be and was secured by the above mentioned fourth trust deed upon Everly's ranch land, running in favor of Altman as beneficiary. That is to say, the deed of trust was executed by Everly as a lien upon its land to secure the debt owing to its vice president and stockholder, Altman. The sale of the stock was effected through escrow and the five-year lease was thereafter executed. The two partners in Specialty were not farmers and they assigned the lease (which contained no covenant against assignment) to Max Guttman and Betty Lee Morales, who in turn (in June 1956) subleased (or assigned) to Raymond R. and Russell Rummonds, doing business as Rummonds Bros. Ranch. In February 1957, Altman learned of the transfer to Rummonds Bros. Ranch and thereupon gave notices to Specialty, declaring an attempted rescission of the stock purchase and option contract and also purporting to rescind the lease which had been made by Everly to Specialty. The notices in general terms claimed misrepresentations.

In May 1957, Everly, Specialty and Guttman filed a declaratory relief action (No. 679618) against Altman, seeking among other things cancellation of the trust deed securing the balance due from Specialty to Altman on purchase of the 25 shares of Everly stock, and a determination of the continuing efficacy of the option to buy more stock from Altman. Altman answered and counterclaimed, alleging fraud in securing from him the sale and option to purchase of his Everly stock and in obtaining the lease from Everly to Specialty, and asking that plaintiffs be denied relief, that he, Altman, be declared owner of the 25 shares of stock he had sold to Specialty, and that the option be declared rescinded. Simultaneously Altman filed action against Everly, Specialty and Guttman (No.

689130) seeking cancellation of the lease from Everly to Specialty and of the assignment thereof to Morales and Guttman, an accounting, appointment of a receiver, and general damages.

The two cases were consolidated and after trial without a jury the court found that there was no fraud in the transaction, that Altman was not entitled to rescind, that Everly received no consideration for the trust deed securing the Specialty promissory note to Altman, that reconveyance under said deed of trust be made, that "In lieu of said note [secured by the deed of trust], plaintiff Specialty Products should be ordered to execute a new note for $12,250.00, payable to defendant George T. Altman on the same terms and conditions as contained in the original note of $12,250.00, save and excepting that the same need not be secured." Judgment was entered accordingly, including an order to Altman to "sign a request for reconveyance" under the deed of trust and an order to Specialty to execute a new $12,250 promissory note to Altman "containing the same terms and conditions" as did the previous note "saving and excepting that the same need not be secured." This appeal by Altman followed.

Altman in his opening brief declares that he "specifically abandons" his appeal "insofar as . . . directly against Everly Enterprises. This appeal is solely against Morales and Clark, individually and as Specialty copartners, and Guttman and not against Everly Enterprises." Upon the premise that invalidity of the deed of trust, as declared by the judgment, is thus finally established, Altman argues that there has been a failure of consideration to him in that he has been deprived of the security for the unpaid balance of the purchase price of the 25 shares of Everly stock; that he therefore was entitled to rescission, which was wrongfully denied to him by the trial court.

In the first place, however, it appears that inasmuch as the deed of trust was made with the express consent and active participation of all the stockholders, directors and officers of the corporation, it was valid, and the trial court erred in its determination to the contrary. (See *Sargent* v. *Palance Cafe Co.* (1917), 175 Cal. 737, 739 [167 P. 146]; *Garretson* v. *Pacific Crude Oil Co.* (1905), 146 Cal. 184, 188 [79 P. 838]; *Tevis* v. *Beigel* (1959), 174 Cal.App.2d 90, 99 [12] [344 P.2d 360].) Moreover, plaintiffs-respondents state in their brief that they "have no objection to having that portion of the judgment reversed, with instructions denying

the corporation . . . any relief pursuant to its said cause of action [seeking cancellation of the trust deed] . . . . We have never sought, nor do we now seek, an advantage. . . . We have never refused to pay Mr. Altman what is due him. . . . We want to be treated equitably and are willing to do equity.'' At oral argument counsel for respondents reiterated his consent to modification of the judgment in the respects mentioned.

We also note that the rule is that where the parts of a judgment appealed from are so connected with the remainder that appeal from a part only, affects the other parts or involves a consideration of the whole, the reviewing court will consider and act upon the entire judgment when necessary to accomplish justice. (See *American Enterprise, Inc.* v. *Van Winkle* (1952), 39 Cal.2d 210, 217-218 [4-6] [246 P.2d 935]; *Hamasaki* v. *Flotho* (1952), 39 Cal.2d 602, 609 [9] [248 P.2d 910]; *Blache* v. *Blache* (1951), 37 Cal.2d 531, 538 [4] [233 P.2d 547]; *Estate of Murphey* (1936), 7 Cal.2d 712, 717 [4] [62 P.2d 374]; *Milo* v. *Prior* (1930), 210 Cal. 569, 571 [5] [292 P. 647]; *Whalen* v. *Smith* (1912), 163 Cal. 360, 362-363 [125 P. 904, Ann.Cas. 1913E 1319].)

We are satisfied that this is an appropriate case for application of this rule. Contrary to Altman's contentions, the evidence amply supports the trial court's finding that he was not the victim of fraudulent misrepresentations made by plaintiffs and that he was defrauded of nothing by them. It does not, however, follow that he is not entitled to receive payment of the $12,250 balance owing to him by Specialty on purchase of the 25 shares of Everly stock. Altman had agreed with Clark and Morales that there should be no personal liability upon the promissory note given by Specialty to evidence such balance, and to deprive him of the security of the deed of trust would in effect leave him with a promissory note but no means of enforcing its payment. Therefore the portion of the judgment so decreeing (hereinafter specifically identified) will be modified accordingly in the interests of justice.

Altman's further contention that the assignment of the lease by Specialty, to Guttman and Morales, was invalid was raised for the first time on appeal, and will therefore not be considered. (See *Damiani* v. *Albert* (1957), 48 Cal.2d 15, 18 [3] [306 P.2d 780]; *Peebler* v. *Danziger* (1951), 104 Cal. App.2d 491, 493 [2] [231 P.2d 895]; 3 Cal.Jur.2d 604

§ 140, and cases there cited.) ▮▮▮ It may be commented, however, that the lease contains no covenant against assignment, and would therefore appear to have been assignable. (See *Chandler* v. *Hart* (1911), 161 Cal. 405, 415 [119 P. 516, Ann.Cas. 1913B 1094] ; 30 Cal.Jur.2d 362, § 214.)

The judgment is modified by changing the paragraph designated therein as ''(b),'' so that such paragraph shall read as follows:

''(b) Plaintiffs take nothing by reason of their Second Cause of Action in Case No. 679618. That certain deed of trust executed by Everly Enterprises, Inc., a California corporation, as trustor, naming George T. Altman, as beneficiary, and Security Title Insurance Company, trustee, and recorded in Book 1897, page 5216, Official Records, in the office of the County Recorder of Riverside County, affecting that certain real property:

SW ½ and the SW ¼ of the SE ¼ of Section 35, Township 6 South, Range 7 East, San Bernardino Base & Meridian, as shown by United States Government Survey; excepting therefrom the North ½ of the North ½ of the SW ¼ of Section 35,

be and the same is, as well as the note which said deed of trust secures, hereby declared valid pursuant to its terms, except that personal liability of the makers of the note for its payment has been waived by the payee.''

As so modified the judgment is affirmed, each party to bear his own costs on appeal.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.

Appellant's petition for a rehearing was denied November 30, 1960.